IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ORSURE STOKES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 6: 23-cv-03311-MDH |
| ) | |
| COMPLETE MOBILE DENTISTRY and ) | |
| DANIEL DRISCOLL, in his official capacity as ) | |
| the Secretary of the Army, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is the Secretary of the Army's Motion for Summary Judgment. (Doc. 101). Defendant moves for summary judgment on Count II, retaliation under Title VII.[1] The motion has been fully briefed and is ripe for review. For the reasons stated herein, the motion for summary judgment in favor of the Secretary of the Army is granted.

## BACKGROUND

The following background facts are taken from Defendant's motion for summary judgement. Plaintiff, in his suggestions in opposition, fails to admit or controvert Defendant's separately numbered paragraphs. Local Rule 56(b)(1) states:

> A party opposing a motion for summary judgment must begin its opposing suggestions by admitting or controverting each separately numbered paragraph in the movant's statement of facts. If the opposing party controverts a given fact, it must properly support its denial in accordance with Fed. R. Civ. P. 56(c). Unless specifically controverted by the opposing party, all facts set forth in the statement of the movant are deemed admitted for the purpose of summary judgment.

---

[1] Plaintiff's Amended Complaint originally asserted four claims: Count I - race and color discrimination; Count II – retaliation; Count III - age discrimination; and Count IV - disability discrimination. The Court previously dismissed Counts I, III, and IV against the Army.

1

As Plaintiff has not specifically controverted any of the facts set forth in the statement of uncontroverted facts by Defendant, they will be deemed admitted for the purpose of summary judgment.

After graduating from dental school, Plaintiff joined the United States Navy and worked as a dentist. In 1995 he received leave with an honorable discharge and began attending classes to specialize as an endodontist. Endodontists are highly specialized dentists who deal primarily with root canals and the treatment of nerves inside a tooth. Less than 3% of all dentists are endodontists. After graduating with his endodontist degree, Plaintiff worked in private practice for several years.

In approximately 2005, Plaintiff applied to Central Care and was offered and accepted a contract assignment at Fort Leonard Wood, Missouri ("FLW") as an endodontist. Plaintiff did not interview with the Army for the position. Complete Mobile Dentistry ("CMD") subsequently became the successful bidder for providing dental services to FLW. On November 19, 2018, Plaintiff signed a Dental Contractor Agreement with CMD to continue providing dental services at FLW. Plaintiff's contract with CMD specified that Plaintiff was "to perform dental diagnosis and treatment at client requests," but Plaintiff was "to determine the manner in which such services [were] performed and [was] solely responsible for the failure to complete such services in an appropriate manner." Plaintiff was paid directly by CMD for his work. The Army did not pay Plaintiff for the work he performed at FLW.

Within FLW, the Army maintained an organization referred to as DENTAC (Dental Command). During the relevant time, DENTAC consisted of three dental clinics at FLW. At the clinics, Plaintiff was provided an examination room that included dental chairs and a lighted screen to review x-rays. Plaintiff's dental assistants were government employees. Plaintiff did not supervise the dental assistants, did not conduct their evaluations, and could not hire or fire them.

2

CMD provided Plaintiff's written job description and an employee handbook. The Army handled all patient scheduling and Plaintiff was not involved in any patient billing. Plaintiff was not eligible for health insurance from the Army and was not eligible to participate in any Army retirement plans. Plaintiff was not paid for vacation. The Army did not pay Plaintiff for his dental license fees, professional organization dues, or premiums associated with medical malpractice insurance.

The Army never assigned Plaintiff any duties outside of those he performed as an endodontist. The Army did not provide Plaintiff with on-the-job training and Plaintiff did not apply to the Army for employment. In fact, Plaintiff was required to wear an "access badge" with the word "CONTRACTOR" printed on it, and CMD was the company listed on his badge.[2]

From July 2017 to July 2020, Col. Chun Chan was the Commander of DENTAC at FLW. During the same general timeframe, the officer-in-charge of the dental clinic at FLW was Major Eric Setter. In 2018-19, Col. Daniel Kersten, an endodontist, was the Director of Endodontic Program at Fort Bragg and the Endodontic Consultant to the Surgeon General.

In 2018, Col. Kersten reported to FLW that he had seen a patient at Fort Bragg who reported having a root canal at FLW six months earlier. After an examination, Col. Kersten determined that the patient received a "highly substandard root canal" and reported the same to FLW. After determining that Plaintiff treated the patient, Col. Chan issued a memorandum to Plaintiff informing him:

> Effective immediately all of your clinical privileges at [FLW] have been placed in abeyance. This action is being taken due to patient safety concerns, specifically Negligence in Diagnosis. This abeyance is not a reportable action, nor is it considered an adverse action that you must report or disclose.

---

[2] When asked what his "pay plan, series, and grade" were with the Army, Plaintiff responded under oath that he was an "independent contractor."

Col. Chan also organized a Clinical Quality Management/Quality Assurance Investigation to review the allegations against Plaintiff. Twelve days later, Col Chan issued another memorandum to Plaintiff informing him that FLW had decided to reinstate Plaintiff' clinical privileges based on the recommendation of the Clinical Quality Management/Quality Assurance Investigation. Plaintiff's work was to be monitored and evaluated for 28 days. During this same time period, Maj. Setter, a dentist, and Plaintiff disagreed as to whether a particular patient required a root canal.

In 2019, Col. Kersten treated two additional dental patients who had been treated at FLW and who he believed received "substandard endodontic therapy." The issues were similar to the treatment issues Col. Kersten had observed in the 2018 patient, to wit: "missed canals, inadequate instrumentation, and poor quality obturation." Col. Kersten notified Maj. Jared Beam, an active-duty endodontist at FLW, about his observations. Col Kersten did not know the identity of the dentist providing the care to the three patients at FLW. However, it was determined that all three patients were treated by Plaintiff. Maj. Beam brought the 2019 cases to the attention of Col. Chan.

On February 20, 2019, FLW was informed that Plaintiff "became abrasive with a patient when patient did not want a root canal procedure completed and displayed frustration in front of this patient." In addition, it was reported that Plaintiff demanded the patient call him "sir" when addressing him. On February 22, 2019, FLW was informed that Plaintiff "displayed an unprofessional, overbearing demeanor." On December 3, 2019, a dentist at FLW reported, that after performing radiographic quality checks and conducting a follow-up examination on a patient recently seen by Plaintiff, the dentist concluded that Plaintiff "provided an incorrect diagnosis and did not provide appropriate treatment for the patient in question."

On December 8, 2019, Col. Chan issued a memorandum to Plaintiff informing him:

4

> In accordance with DHA PM 6025.13, effective immediately, your clinical privileges are summarily suspended. This action is being taken in response to allegations of clinical deficiencies and lack of clinical judgment. These issues have had adverse effects on patient safety and healthcare delivery.

Again Col. Chan arranged for a Clinical Quality Management/Quality Assurance Investigation to review the allegations.

During Plaintiff's suspensions, his endodontist work was handled by Maj. Jared Beam, an endodontist and active duty servicemember at FLW. On December 6, 2019, Yvonne Camarace, a Contracting Officer with the Army, notified CMD of Plaintiff's "continuing performance issues" at FLW setting forth 14 numbered allegations. During this time, Col. Chan made the decision that DENTAC no longer needed a contract endodontist because Maj. Beam had been able to "cover the entire patient population" at FLW needing endodontic care during Plaintiff's absence. Col Chan believed DENTAC "simply did not have enough workload to keep two endodontists busy."

In addition, Col. Chan believed that there was no need to keep the contracting endodontist slot since there were additional concerns with Plaintiff's quality of work. Col. Chan, along with Morgan Dowling, contacted Lt. Col Benjamin Owen, the Dental Directorate's Contract Liaison, and notified him that DENTAC no longer needed the contract endodontist slot.

At a quarterly meeting between FLW and CMD on December 11, 2019, FLW verbally notified CMD that it no longer had a requirement for a contract endodontist. Subsequently, on December 18, 2019, Ms. Camarace formally notified CMD in writing that it no longer had a requirement for a contract endodontist and noted that it was not requesting that CMD provide a different endodontist.

Plaintiff learned that his services as an endodontist at FLW were ending when he received a call from someone with CMD. On January 10, CMD also sent an email to Plaintiff informing him: CMD has been notified by the military that there is no longer a requirement for an Endodontist

5

at FLW. Because of this change in requirement, CMD will end the current independent contracting agreement with you effective immediately.

As previously noted, in September of 2018, Plaintiff and Major Setter had a professional disagreement regarding the necessity of a root canal for a particular patient. As a result of the disagreement, on September 10, 2018, Plaintiff went to the EEO office at FLW. He was told that the office could not help him because he was not in the military, but Plaintiff went to the EEO office because he had been told "to leave the clinic and [he] didn't agree with what [Maj. Setter was] saying." Plaintiff further explained in his testimony:

> Q. Why did you go to the EEO office after Major Setter imposed this period of time when you couldn't be at the clinic?
>
> A. Because I didn't believe, I didn't agree with his diagnosis, and then they made me leave the clinic. I thought I was done wrong. I know I was.

Plaintiff went to the EEO office because he believed that Maj. Setter's decision "was not fair and right." He further explained:

> Q. You said you felt that his decision was unfair. Did you believe it was discriminatory?
>
> A. Well, he's a junk dentist. I'm the endodontist. I thought I knew more than he did.

The EEO complaints manager prepared an Information Inquiry Summary of the meeting with Plaintiff and identified as Plaintiff's matter of concern:

> [Stokes] alleges he was suspended for 30 days starting today based on erroneous information involving a patient he evaluated on or about August 22, 2018. [Stokes] was instructed to open the tooth of a patient he told his white OTC (MAJ Eric Setter) that he did not feel was indicated based on his evaluation. [Stokes] showed his OTC the healthy tooth once he completed the procedure he was instructed to perform. [Stokes] alleges when he returned to work for his next scheduled day of duty, he was given a written suspension notice by the DENTAC Commander (L TC Chun Chan).

6

After 7 or 10 days, Plaintiff returned to the EEO office at FLW and spoke to a Mr. Wiley. The second time Plaintiff visited the EEO office he took his former dental assistant, Marvin, with him. Plaintiff did not tell Maj. Setter he had gone to the EEO office and Plaintiff does not think Maj. Setter knew about Marvin going to the EEO office with Plaintiff. Those two occasions were the only times Plaintiff went to the EEO office at FLW.

Prior to his contract being terminated by CMD, Plaintiff never filed an EEO complaint. Plaintiff's only involvement in any EEO "complaint" were the two occasions that he went to the EEO office at FLW in September of 2018. When asked why he thought the termination of his endodontist services at FLW was retaliation, Plaintiff testified:

> Q. Now, in your EEO complaint as well as in this lawsuit, you claim that this termination of your services at Fort Leonard Wood was retaliation. Do you recall making that allegation?
>
> A. Yes.
>
> Q. In retaliation for what?
>
> A. Because I had showed, I had told Major Setter it didn't need a root canal, tooth didn't need a root canal, and I turned out to be right.
>
> Q. It's your belief that the termination went all the way back to the incident in 2017, 2018, where Major Setter felt someone needed a root canal and you concluded that that was not correct?
>
> A. Right.
> . . . .
>
> Q. Anyway, so retaliation is for this incident in 2017, 2018 where, I don't know, it sounds to me like you sort of showed him up because you knew a little more about root canals than he did. Is that fair?
>
> A. Yes.
>
> Q. Embarrassed him. Is that . . .
>
> A. I don't think it was embarrassing, but he was one of them type people, he was one of them type people he didn't like to be wrong.

7

Q. Any other reason that you think your termination was retaliation?

A. Well, I think he had it out, see I was retired Navy and they were Army, so I think that was his thing too.

Q. He didn't like that you were a Navy man?

A. Right.

Q. Anything else that you think would support your claim that this termination was retaliation?

A. I'm going to be honest, hey. He was a brand new, the first time at OIC, we could tell he didn't know nothing and he didn't like people telling him anything.

Col. Chan was not aware of any prior EEO activity of Plaintiff. Col. Chan was "vaguely" aware that Plaintiff had gone to the EEO office at FLW in 2018 after the first suspension, but he never received any official notification that Plaintiff was engaging in any EEO protected activity.

**STANDARD**

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

# DISCUSSION

**1. Independent Contractor.**

First, Defendant argues that Plaintiff was an independent contractor, not an employee, and as a result his claim for retaliation under Title VII fails.

The case law is clear that Title VII applies to only employees, not independent contractors. *Glascock v. Linn Cnty. Emergency Med.*, PC, 698 F.3d 695, 698 (8th Cir. 2012). Whether someone is an employee or an independent contractor is determined by "all aspects of the working relationship" and is a fact intensive inquiry. *Schwieger v. Farm Bureau Ins. Co. of NE*, 207 F.3d 480, 483-84 (8th Cir. 2000)(citations omitted). "A primary consideration is the hiring party's right to control the manner and means by which a task is accomplished." *Id.* Courts consider a variety of factors including the following.

> …the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 484.

**a. Control**

First, Plaintiff's Dental Contractor Agreement was with CMD. Pursuant to the Agreement, Plaintiff was to perform dental diagnosis and treatment. The Army was in charge of scheduling patients at FLW.

The Army states that "control" is sometimes described as the "central" factor in distinguishing employees from independent contractors but that in this case the analysis is

different. The Army cites to *Glascock v. Linn Cnty. Emergency Med., PC*, where the Eighth Circuit stated:

> [T]he issue of control is less useful in the context of emergency room physicians than in some other settings because a hospital 'must assert a degree of conflicting control over every doctor's work . . . to discharge its own professional responsibility to patients,' regardless [of] whether the physician is an employee or independent contractor."

*Glascock v. Linn Cnty. Emergency Med.*, PC, 698 F.3d at 698.

The court ultimately held that, assuming control was a relevant consideration, the record was "inconclusive" on the issue of control. *Id.* See also *Tipton v. Barr*, No. 6:17-03179-CV-RK, 2019 WL 6736236, at *7 (W.D. Mo. Dec. 11, 2019). Here, the Court finds the Army controlled the scheduling of Plaintiff's patients. However, the Army was not the hiring party and instead had an agreement with CMD who provided the dentists and endodontists.

### b. Degree of skill

An endodontist is an advanced degree that is highly skilled, even among dentists.

### c. Source of the instrumentalities and tools

The Army provided Plaintiff with the supplies and equipment necessary to complete his work. The Army argues that while this factor does favor employee status, the weight of this factor is largely diminished because of the location of Plaintiff's work.

### d. Location of the work

Plaintiff worked at the dental clinic on FLW. The work required Plaintiff to be personally present at an Army facility to provide his endodontist services as he was treating service members.

### e. Duration of the relationship between the parties

Plaintiff worked as an endodontist at FLW for approximately fourteen years under different companies.

**f. Hiring party's right to assign additional projects**

The Army did not assign Plaintiff duties outside of being an endodontist. Instead, Plaintiff was required to perform a list of duties articulated in his CMD Agreement.

**g. Worker's discretion over when and how long to work**

The Army had discretion to control Plaintiff's work schedule and the scheduling of patients.

**h. Payment**

Plaintiff was paid directly by CMD.

**i. Worker's role in hiring and paying assistants**

Plaintiff had no role in hiring, paying, selecting, reviewing, disciplining, or terminating dental assistants.

**j. Whether the work is part of the regular business of the hiring party**

DENTAC provides dental services to service members. Plaintiff provided endodontic care to soldiers stationed at FLW at these clinics.

**k. Whether the hiring party is in business**

The Army is a governmental entity not in private "business." However, governmental entities are equally capable of hiring both employees and independent contractors.

**l. Benefits**

Plaintiff did not receive retirement or healthcare benefits from the Army. He did not accrue sick, annual or other family leave, and was paid by CMD at a contractual hourly rate for the hours he worked.

**m. Tax treatment**

The Army neither directly paid, nor withheld, taxes from Plaintiff's pay. Plaintiff was responsible for all federal, state and local taxes, including Social Security, Medicare, unemployment insurance, and professional license fees.

**n. Economic realities**

The CMD Agreement states that it creates an independent contractor relationship and not an employer-employee relationship between Plaintiff and CMD. Further, either party could terminate the relationship at will.

The Court has considered the relevant factors applicable to Plaintiff's work at FLW. It is clear Plaintiff entered into a Dental Contractor Agreement with CMD, and that pursuant to that Agreement Plaintiff was stationed at FLW's clinics. The Army was not the "hiring" party and was not involved in the Dental Contractor Agreement between CMD and Plaintiff. In fact, Plaintiff was required to wear a contractor badge for access onto the Army base and CMD was the entity identified on his credentials.

While the Army controlled the scheduling of Plaintiff's patients, and provided the dental rooms where he worked, the Army did not pay Plaintiff and provided no benefits for his dental work. The Army did not grant Plaintiff leave or vacation. The minimal control over Plaintiff's work in scheduling his patients does not create employment status with the Army. In this case, Plaintiff specifically was performing work on the base pursuant to a contract with another entity and was granted access as a "contractor."

The Court finds Plaintiff was not an employee of the Army and as a result Title VII does not apply to his claim. However, even if Plaintiff is covered under Title VII as an employee, for the reasons stated herein, he has also failed to state a claim for retaliation.

**2. Retaliation.**

To establish a prima facie case for retaliation, Plaintiff must establish: (1) he engaged in a protected activity; (2) he suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct. See *Hunt v. Nebraska Pub. Power Dist.,* 282 F.3d 1021, 1028 (8th Cir. 2002). Defendant argues Plaintiff cannot meet either the first or third requirement.

Title VII "prohibits employers from retaliating against an employee who is engaged in a protected activity, which can be either opposing an act of discrimination made unlawful by Title VII . . . or participating in an investigation under Title VII." *Id.* However, not every complaint about workplace conditions constitutes a protected activity under Title VII, and retaliation in response to an unprotected activity does not support a retaliation claim. See *DeRyke v. Cracker Barrel Old Country Store, Inc.,* 2009 WL 3762964, at *3 (W.D. Mo. Nov. 10, 2009). For example, merely talking to someone who works in an EEO office is not a protected activity. Rather, plaintiff must report an underlying discriminatory employment practice that falls under Title VII. See *Warren v. Kemp*, 79 F.4th 967, 974 (8th Cir. 2023).

Here, it is undisputed Plaintiff went to the FLW EEO office on two occasions in September of 2018. Plaintiff visited the EEO office after he had a professional disagreement with Major Setter. Plaintiff stated the purpose of the visits was a disagreement regarding treatment of a patient. Plaintiff was also upset that Major Setter imposed a time when Plaintiff could not be at the clinic. Regarding his EEO visit, Plaintiff testified "Because I didn't believe, I didn't agree with his diagnosis, and then they made me leave the clinic. I thought I was done wrong. I know I was." When asked if he believed the disagreement was discriminatory Plaintiff testified: "Well, he's a junk dentist. I'm the endodontist. I thought I knew more than he did."

13

Plaintiff' disagreement with Major Setter regarding the treatment of a patient does not constitute a protected activity. Plaintiff must report an underlying discriminatory employment practice that falls under Title VII. Further, Plaintiff offers no evidence of any discrimination or even that he alleged discrimination.

Instead, Plaintiff argues he has produced sufficient evidence to show the Army sought to refill Plaintiff's exact position after removing him. Plaintiff contends the Army has admitted that Plaintiff went to the EEO in 2018, that Plaintiff was fired by Col. Chan, and that Plaintiff was fired after complaining to the EEO. In support of this argument Plaintiff states he has filed a copy of a job listing that shows CMD was soliciting applications for an endodontist position in Fort Leonard Wood shortly before Plaintiff's termination. This is not a prima facie case of discrimination. Merely because Plaintiff believes CMD had a job listing for his position does not create a claim for discrimination. Plaintiff has produced no evidence he made any claim of discrimination to the EEO office or anyone else at the Army. Rather, Plaintiff testified he disagreed with another dentist and believed he was right about a treatment plan.

Plaintiff additionally argues the abeyance letters were determined meritless and that the credentialling committee found that Plaintiff was not negligent in diagnosing a patient and that there were no errors or harm to patients. Again, while Plaintiff may have disagreed with the investigation or abeyance letters, there is no evidence that any such action was taken based on a discriminatory motive. In fact, Plaintiff himself testified he complained about his disagreement with the other dentist, but raises nothing discriminatory in his complaints.

Plaintiff argues he engaged in a protected activity by complaining to the EEO, but that alone does not support a retaliation claim. Plaintiff provides no evidence, or allegation, that he raised a complaint of discrimination or that he had been treated unfairly due to his race, alleged

disability, or age. See *Cf. Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 199) (fact that employee visited EEO office and spoke with EEO counselor was not protected activity where the employee did not "complain of illegal discrimination or imply that she had been treated unfairly because of her race, color, religion, sex, or national origin").

Plaintiff went to the EEO office at FLW but stated that his complaint was about a professional dispute with another dentist. Simply reporting to the EEO office is not a protected activity and "not every complaint about conditions in the workplace, legitimate or otherwise, constitutes a protected activity; retaliation in response to an activity that is not protected does not support a retaliation claim." See *Ray v. Health Consultants*, 2020 WL 1640359, at *9 (E.D. Mo. Apr. 2, 2020). See also *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 1510 (2001); *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137-38 (8th Cir. 2007) ("Complaining about an entity's actions outside the ambit of an employment practice is unprotected by Title VII."); *Tiedeman v. Nebraska Dept. of Corr.*, 144 Fed. Appx. 565, 566 (8th Cir. 2005); *Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002).

The Court finds Plaintiff's complaint about a professional dispute with another dental practitioner does not constitute protected activity under Title VII. Further, Plaintiff has provided no other evidence of alleged discriminatory conduct. As such, Plaintiff cannot establish a prima facie case of retaliation. Summary judgment in favor of Defendant on the claim of retaliation is granted.

## DECISION

Wherefore, for the reasons stated herein, Defendant's motion for summary judgment is **GRANTED.** Plaintiff's claim for retaliation under Title VII is dismissed.

**IT IS SO ORDERED.**

DATED: November 6, 2025

                                         */s/ Douglas Harpool*
                                         **DOUGLAS HARPOOL**
                                         **UNITED STATES DISTRICT JUDGE**